JODI LINKER
Federal Public Defender
Northern District of California
DAVID W. RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:       david_rizk@fd.org


Counsel for Defendant HAEUSER


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| UNITED STATES OF AMERICA, | **Case No.:** CR 22-00181 SI |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |
| v. | |
| ROBERT HAEUSER, | **REDACTED** |
| Defendant. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................. 3

III.    SENTENCING GUIDELINES & OBJECTIONS TO THE PSR .............................. 6

   A.   The § 2G2.1 Production Guideline Range is Excessive, Not Guided by Empirical
        Evidence, and Over-Represents the Seriousness of the Offense. ................................. 6

   B.   The § 2G2.2 Receipt Guideline is also Excessive and Empirically Unsupported, but
        the "Natural" Guideline Range Supports Mr. Haeuser's Recommendation of 60
        months................................................................................................................. 11

   C.   Mr. Haeuser Objects to the Condition that He Not Access Adult Pornography, Online
        of Otherwise, Because it is Not Supported by the Record and Thus Would Violate §
        3583(d) and his Constitutional Rights. ....................................................................... 16

IV.     LEGAL STANDARD ......................................................................................... 19

V.      THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553 ................................... 19

VI. CONCLUSION ...................................................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Kimbrough v. United States,*
  552 U.S. 85 (2007) ............................................................................... 11, 16, 19

*Nelson v. United States,*
  555 U.S. 350 (2009) (per curiam) ...................................................................... 19

*Pepper v. United States,*
  562 U.S. 476 (2011) ...................................................................................... 11, 16

*United States v. Booker,*
  543 U.S. 220 (2005) ...................................................................................... 11, 19

*United States v. Canfield,*
  893 F.3d 491 (7th Cir. 2018) ............................................................................. 17

*United States v. Castellano,*
  --- F.4th ---, 2023 ............................................................................................ 17

*United States v. Claiborne,*
  439 F.3d 479 (8th Cir. 2006) ............................................................................. 15

*United States v. Ellis,*
  984 F.3d 1092 (4th Cir. 2021) ........................................................................... 17

*United States v. Gnirke,*
  775 F.3d 1155 (9th Cir. 2015) ....................................................................... 16, 17

*United States v. Hanson,*
  561 F. Supp. 2d 1004 (E.D. Wis. 2008). ............................................................ 14

*United States v. Henderson,*
  649 F.3d 955 (9th Cir. 2011) ..................................................................... 12, 13, 15, 16

*United States v. Martinez-Torres,*
  795 F.3d 1233 (10th Cir. 2015) ......................................................................... 17

*United States v. Robinson,*
  669 F.3d 767 (6th Cir. 2012) ............................................................................. 14

*United States v. R.V.,*
  157 F. Supp. 3d 207 (E.D.N.Y. 2016) ............................................................... 14

*United States v. Voelker,*
  489 F.3d 139 (3d Cir. 2007) .............................................................................. 17

*United States v. Wagner,*
  872 F.3d 535 (7th Cir. 2017) ............................................................................. 17

1

**Federal Statutes**

2

18 U.S.C. § 2252 ............................................................................................ 2

3

4

18 U.S.C. § 3553 ...................................................................................... *passim*

18 U.S.C. § 3583 ................................................................................ 16, 18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  INTRODUCTION

Defendant Robert Haeuser will be before the Court for sentencing in this case, which is his first and only entanglement with the criminal justice system. Aside from the allegations in this case, there is no evidence Mr. Haeuser has ever committed any other offense, sexual or otherwise. He had no physical or in-person contact with the minor victim here—only communications online. He did not abuse a position of trust in relation to the minor: he was not a parent, or family friend, or anything like that. He was just a lonely, poorly adjusted young adult, who spent most of his time online. He is not a collector of child pornography and never engaged in this type of behavior before or since the instant offense, which occurred approximately six years ago. This case concerns just 29 images and four videos. Mr. Haeuser presents none of the risk factors that would suggest he is at risk of reoffending; indeed, given the circumstances of this case and his background, the Court may conclude with confidence that he will never again be convicted of any offense. As his grandmother commented succinctly, "he is not what he is charged with." PSR ¶ 61.

Mr. Haeuser's family describes him as helpful, loving, and very bright. Mr. Haeuser was a strong student in high school, and he earned his Bachelor of Science in Mechanical Engineering from U.C. San Diego in 2017. Mr. Haeuser faced significant other disadvantages growing up, however. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ His father divorced his mother during Mr. Haeuser's middle school years, and then his mother effectively abandoned him when he was in high school, leaving Mr. Haeuser to fend for himself. *Id.* ¶¶ 54-57.

Mr. Haeuser ████████████████████████████████████████████████████████████████████████████

1

███████████████████████ Even after he earned his degree, he was unable to find employment as an engineer and he and his grandparents believe that he was stigmatized and turned down by many firms due to his weight. After frustrating and depressing rejections from multiple employers, as a fallback he turned online to find self-employment. He spends most of his time alone, living with his grandparents at their modest apartment in San Rafael, working as a moderator for online platforms. He only rarely ventures out of the house to assist his grandparents with their appointments and needs, and to attend Church on Sundays.

Any prison sentence for Mr. Haeuser will constitute extremely harsh punishment. He is not likely to fare well in prison. ███████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████ The nearest Bureau of Prisons (BOP) facility that houses sex offenders is in Tucson, over 800 miles away. He profoundly fears his grandparents may pass away while he is in custody, and then he will be left alone again. This case was charged as a violation of receipt of child pornography, 18 U.S.C. §§ 2252(a)(2) and (b)(1), which carries with it a mandatory minimum of 60 months. The government's plea offer in this case proposed a Guideline calculation that would result in a range of 57 months on the low end, pursuant to the Guideline applicable to receipt of child pornography, U.S.S.G. § 2G2.2.[1] Rizk Decl. Ex. A. The "natural" Guideline for receipt thus suggests that an appropriate sentence is five to seven years—and this was the government's position when it proposed a disposition to the case at the outset. *Id.*

In the PSR, U.S. Probation has now elected instead to invoke a cross-reference to the Guideline for production of child pornography, U.S.S.G. § 2G2.1, which grossly increases the range to an absurdly harsh 235 months on the low-end, i.e., over 19.5 years in prison. Probation's sentencing recommendation of 15 years—the mandatory minimum for production, which the government intentionally and appropriated elected not to charge—is frankly inhumane and

---

[1] The government reserved the right to argue that the applicable Guideline sentence would be 97 months at the low-end, based on its argument that Mr. Haeuser engaged in a "pattern of sexual abuse." *Id.* Mr. Haeuser respectfully declined the plea offer because the government did not indicate it would consider filing any additional more serious charges, and so he accepted responsibility by pleading guilty to the sole charge.

reflects a lack of understanding of the relative seriousness and value of this case. That sentence is equivalent to a plea offer in a gang murder case, which this is not. The government's recommendation of 120 months is also vastly overly punitive. Mr. Haeuser did not file a motion or request a trial date or otherwise unduly burden the government in any way. Instead, he simply accepted responsibility and plead guilty to the sole charge. There is no justification for increasing the recommendation so dramatically now. The government's recommendation of 120 months is at the high end of the highest conceivable applicable Guideline range that it contemplated when making Mr. Haeuser a plea offer. Thus, to be clear, the government is asking for up to *five additional years in prison* for Mr. Haeuser, not because anything new came to light, or because of the offense conduct itself, but *simply because he declined a plea agreement*. That is not an appropriate reason to escalate a sentencing recommendation, it is not consistent with § 3553(a), and it does not accomplish justice.

Mr. Haeuser respectfully requests a sentence of 60 months in custody, followed by five years of supervised release. Sixty months in federal prison is destined to take a terrible toll on Mr. Haeuser. He is a vulnerable figure, he has never committed any crime previously, and certainly never served any sentence, let alone a five-year sentence in federal prison. Additional years in custody will not accomplish anything. With 60 months, the intervention and deterrence will already be firmly accomplished. Five years is "sufficient, but not greater than necessary" to serve the purposes of 18 U.S.C. § 3553(a).

## II.  FACTUAL BACKGROUND

Mr. Haeuser is 33 years old today. He was born to his mother, Barbara Green, and father, Christopher Haeuser. As set forth in the PSR, ███████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████

1

2

3

4

5

6

7

8

9

His parents

10

divorced when he was in fourth or fifth grade, which was understandably very hard for him at

11

that age. His father disappeared from his life during middle school. *Id.* ¶ 55. As his grandmother

12

related to Probation: "he lost sense of who he was, where he belongs, and who he should turn to."

13

*Id.* at ¶ 61. After his father left, he and his mother moved with his grandparents in San Rafael, *id.*

14

¶ 54, who thankfully took a greater long-term interest in Mr. Haeuser.

15

Although Mr. Haeuser was a strong student in school, especially in math and science, he

16

was severely bullied by other classmates due to his weight and asthma. *Id.* at ¶ 53. He was

17

harassed, mocked, and even assaulted, so often that he eventually had to transfer schools. *Id.* He

18

had few friends. *Id.* He moved to Napa with his mother for high school, where he attended a

19

small Catholic school, Trinity Grammar and Prep School. *Id.* at ¶ 71. At approximately age 16,

20

his mother absented herself from his day-to-day life. *Id.* at ¶ 57. She paid for his housing, but he

21

had to secure a parttime job after school just to pay for his basic needs like food. *Id.* He had to

22

look after his own health and well-being. *Id.* During these formative years,

23

24

Nevertheless, he succeeded in school, graduated from high

25

school, and went on to complete some college coursework before working various retail and

26

tutoring jobs to support himself, as well as spending time volunteering for the charity Guide

27

Dogs for the Blind in San Rafael. *Id.* at ¶¶ 59, 74. Mr. Haeuser related to undersigned counsel

28

that his employment in these jobs reinforced his social anxiety in the working world, even apart

from his experience in school. ████████████████████████████

██████████████████

Mr. Haeuser eventually returned to college and earned his engineering degree from U.C. San Diego in his mid-twenties. *Id.* at ¶ 71. As with his primary schooling, Mr. Haeuser's experience of college was lonely. He did not have friends or enjoy the normal social life and his grandparents were far away in San Rafael. Mr. Haeuser spent his spare time when he was not studying or classes, primarily surfing the Internet, playing video games, and reading fantasy fiction. It was during this period of his life, when he committed the offense before the Court. He was in his mid-twenties, and he had never had a relationship (he still has not today). ████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████. *Id.* at ¶ 18. There is no evidence that Mr. Haeuser ever engaged in any other criminal conduct and he has shown no other signs that might point to any risk of reoffending. He has never otherwise sought access to child pornography in any way and the government did not find other evidence of contacts with any other minors at any point in time. In other words, Mr. Haeuser's crime appears to be an isolated incident during a particularly difficult and lonely period of his life.

Mr. Haeuser eventually earned his degree from U.C. San Diego in 2017 and then applied to a number of engineering positions around California in hopes of finding employment. He was denied across the board. His grandfather shared with undersigned counsel that he believes employers discriminated against Mr. Haeuser due to his weight and appearance. Mr. Haeuser was already primed by his earlier experiences in the workplace to feel insecure. And in his grandfather's telling, the demoralizing experience of being rejected by every employer month after month seemed to confirm to Mr. Haeuser that he had no self-worth in the eyes of others—despite his academic success, and all of his hard work earning an engineering degree from an excellent university. As a result of the negative experiences in his childhood and later on as a young adult, Mr. Haeuser withdrew from most social interactions and instead sought out self-employment and social interactions online.

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Today, Mr. Haeuser lives with his grandparents in San Rafael. He has strong, loving relationships with his grandfather, John Haeuser, and his grandmother, Mary Ann Haeuser. His grandparents are both elderly and his grandmother is terminally ill. They are the closest family and only significant support Mr. Haeuser has, and Mr. Haeuser will almost certainly never see his grandmother again in person after he surrenders because of her illness. The information shared with Probation and the letters submitted to the Court make clear that, despite his personal struggles, Mr. Haeuser is a kind, loving, thoughtful man who is an asset to those around him. Rizk Decl. Ex. B. To this day, Mr. Haeuser is most comfortable and happiest in the online environment, where he spends most of his time. Mr. Haeuser has been on electronic monitoring and highly restrictive conditions for approximately a year and a quarter, since his arrest—significant punishment in its own right. He has been completely compliant without a single violation of his conditions of pretrial release during the pendency of this matter. He leaves his grandparents' home only to support them on doctors' appointments, errands, and the like. A devout Catholic, Mr. Haeuser also reliably attends Church services on Sunday mornings, and from time to time attends Bible study classes in the afternoons.

## III. SENTENCING GUIDELINES & OBJECTIONS TO THE PSR

### A. The § 2G2.1 Production Guideline Range is Excessive, Not Guided by Empirical Evidence, and Over-Represents the Seriousness of the Offense.

As an initial matter, U.S. Probation's decision to invoke the cross-reference to the child pornography production Guideline, while technically applicable under § 2G2.2(c)(1), renders a sentencing range that would have already been extremely harsh under the receipt Guideline provisions at § 2G2.2, now absurdly high under the production Guideline at § 2G2.1: 235-240 months. Why is the range generated by Probation so high? The reasons are set forth below, but the bottom line is that none of them are reasonably related to what actually occurred in this case. Instead, they are the product of Guidelines provisions that are flawed and have been widely criticized by the Sentencing Commission as well as many, many courts.

*First*, the base offense level for child pornography production under § 2G2.1 is 32—*i.e.,* 10 levels higher than the base offense level for receipt of child pornography under § 2G2.1. The

6

10-level difference means that, for a defendant like Mr. Haeuser, who has no criminal history whatsoever and thus falls into Criminal History Category I, the base offense level of 22 for receipt is associated with a range of 41-51 months, whereas the base offense level for production at 32 is 121-151 months. Where the defendant has no prior criminal history, there was never any physical or in-person contact with the minor victim, and there are a low number of images at issue, the defense submits that the former base offense level, whereas starting at a base offense level associated with a sentence ten years or more is not appropriate.

*Second*, and as set forth below in Section III.B in greater detail with the relevant case law, under either the production or receipt Guideline, the enhancements that further increase the sentencing range are arbitrary and not based on any empirical evidence. For the production Guideline discussed here, Probation's proposed 2-level enhancement under § 2G2.1(b)(2)(A), *see* PSR ¶ 32, ostensibly because "the offense involved a sexual act or sexual contact," is not empirically based in any evidence and does not assist in distinguishing more or less aggravated offense conduct—which is the ultimate purpose of the Guidelines. Given the extremely broad definitions of "sexual act," and even more so, "sexual contact," that apply here, it is virtually difficult to conceive of a case that would not trigger this particular enhancement.[2] In this particular case, although there was discussion of masturbation, defense counsel is not aware of any evidence that either Mr. Haeuser or the minor actually did masturbate. Defense counsel reviewed the evidence of contraband in this case, and does not recall any evidence of actual masturbation, and in any case, there is no such evidence currently in the record before the Court other than a single inconclusive statement from the defendant asking whether he might masturbate. As the government's memorandum concedes, there is also no binding Circuit law that it should apply in present circumstances to the victim's conduct. In any case, the

---

[2] *See* U.S.S.G. § 2G2.1, App. Note 2 (citing 18 U.S.C. § 2246(3) ("sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person"). According to the most recent sentencing data the enhancement is applied to nearly half of all production cases. Tarasyuk Decl. ¶ 6.

enhancement has little value because it is so broadly applicable and, in effect, simply serves to further increase the already excessive base offense level.

Similarly, Probation also indulged the government's request to include an additional enhancement under § 2G2.1(b)(6)(B) because the offense "involved the use of a computer." PSR ¶ 33. However, Sentencing Commission data shows that virtually all child pornography cases today involve the use of a computer (*see* below at Section III.B), rendering the enhancement meaningless and subjecting it to wide criticism, including by district judges in the Northern District. Approximately two-thirds of production cases involve the use of a computer, according to the most recent sentencing data. *See* Tarasyuk Decl. ¶ 6.

*Third*, note that here the Guideline range calculated by Probation based on the sentencing table would be 235-293 months, but it is necessarily capped by the *statutory maximum of 20 years in prison*. A recommended sentence that exceeds the statutory maximum is of no practical assistance to the Court and even a recommended sentence in that rough ballpark—such as the 15 years that Probation recommends—grossly overstates the appropriate punishment in this case. Again, Mr. Haeuser did not commit an assault or murder for a racketeering organization, and yet that is the kind of sentence suggested by the Guidelines.

*Fourth* and finally, importantly, the government intentionally elected *not* to charge Mr. Haeuser with production of child pornography. That was entirely appropriate here. Even if Mr. Haeuser offended under the production statute, his conduct was of the least aggravated kind conceivable. In its 2021 Report on sentencing for production cases, the Sentencing Commission also proposed a three-part rubric for assessing the conduct of those charged with production, using the concepts of proximity, propensity, and participation.[3]  In each category, Mr. Haeuser is among the least culpable offenders.

---

[3] U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses* (October 2021), at 26, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last accessed March 3, 2023).

"Proximity" recognizes that "the degree of harm to the victim varies based on the offender's physical proximity and personal relationship with the victim." *Id.* at 29. Over sixty percent of production offenders are physically present with the minor victim and the majority maintained a position of trust of the minor, such as a parent or step-parent, legal guardian, other relative, family friend, teacher or coach, etc. *Id.* at 29-30. Mr. Haeuser was none of these. And, unlike the majority of production offenders, Mr. Haeuser was completely remote in his communications with the minor. *Id.* at 31.

The Commission also analyzed four measures of "participation": (1) "the method of production used by the offender"; (2) "whether the offender committed the offense with a coparticipant"; (3) "any sexual contact with the victim during production"; and (4) "any incapacitation, coercion, enticement, or misrepresentation used against the victim." *Id.* at 34-35. Mr. Haeuser is again in the least aggravated position as to each category. Here, the minor produced the pornography—which is true in a minority of production cases. *Id.* at 34. There was no co-participant or sexual contact with the victim. Notably, over 80% of production cases involve sexual contact with the minor during production. *Id.* at 35. Finally, Mr. Haeuser did take advantage of the minor's youth when he undertook an online chat-based relationship with her, but he did not incapacitate, coerce through threats or bullying or violence, misrepresent himself, or entice the minor using gifts.

Finally, as to "propensity" to commit the offense, Mr. Haeuser is again among the very least aggravated and least risky offenders. Here, the Commission examined: (1) "whether an offender shared self-produced child pornography, or possessed or distributed additional child pornography that the offender did not produce"; (2) "whether an offender was a member of an online community devoted to child pornography or sexual exploitation"; (3) "whether an offender had any previous contact sex offenses (any illegal sexually abusive conduct involving actual or attempted sexual contact with a victim)"; and (4) "whether an offender had a history of noncontact sex offenses (such as soliciting a minor online)." *Id.* at 40. Mr. Haeuser is in the minority of defendants with no other additional child pornography conduct of sexual exploitation of any kind. *Id.* He did share child pornography or collect other child pornography from another

9

source at any time; he was not a member of any community that promoted sexual abuse. Approximately 40% of defendants charged with production actually committed a contact-type sex offense against a minor at some point in time. *Id.* at 40-42. More than one in ten defendants charged with production had a prior contact sex offense conviction—and even more were arrested for, or admitted, or at least were alleged, to have committed a contact offense against a child. *Id.* Mr. Haeuser does not fall into any of these more aggravated categories: nobody has even alleged he has ever committed a contact offense of any kind (let alone any other crime). He also did not solicit sex or commit some other non-contact offense, such as distribution of child pornography. *Id.*

U.S. Probation completely overlooks all of this highly relevant research and analysis; its sentencing recommendation to the Court is thus not well-informed or well-founded. A production charge, with its mandatory minimum of 15 years in prison, would have been wildly excessive to the point of being indefensible in this case. Such charges are rarely brought in this district and instead defendants are typically permitted to plead to a lesser charge, in recognition that the mandatory-minimum sentences applicable to federal sex offenses involving minor are overly punitive and inconsistent with the mandate of § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary." In fact, in December 2022 Attorney General Merrick Garland issued new guidelines to federal prosecutors regarding mandatory-minimum charges, urging that they be employed less frequently and more cautiously than in the past.[4] The defense requested that the U.S. Attorney's Office reconsider charging Mr. Haeuser in view of the new direction from Attorney General Garland—which by their terms undisputedly apply to this case—but the government tersely refused without explanation. Rizk Decl. Ex. C & D.  At a minimum, what all this demonstrates is that the government made intentional charging decisions and calibrating those charges with its own view of the offense conduct.

---

[4] *See* Office of the Attorney General, Memorandum for all Federal Prosecutors, December 16, 2022, *available at* https://www.justice.gov/media/1265326/dl?inline (last accessed March 3, 2023).

10

Given the greatly overly punitive results of the production Guideline, and the foregoing analysis from the Sentencing Commission, all of which supports the U.S. Attorney's Office election not to charge Mr. Haeuser with production of child pornography, the defense respectfully submits that Mr. Haeuser should not be punished for production under the Guidelines. The Court should disregard the Guideline sentence generated under § 2G2.1 pursuant to *Kimbrough v. United States,* 552 U.S. 85, 108-09 (2007), and instead consider the receipt Guidelines under § 2G2.2, profoundly flawed though it still is, a more reasonable starting point for thinking about an appropriate sentence.

**B.   The § 2G2.2 Receipt Guideline is also Excessive and Empirically Unsupported, but the "Natural" Guideline Range Supports Mr. Haeuser's Recommendation of 60 months.**

The Guideline for receipt of child pornography is also extraordinarily harsh and has been subject to extensive criticism from many quarters—but it, at least, is in the right ballpark and suggests that the sentence of 60 months recommended by Mr. Haeuser is appropriate in this case. Under the receipt Guidelines, the total offense level would be 25 or 30, *i.e.*, 57 or 97 months at the low end. *See* Rizk Decl. Ex. A. In other words: roughly between five and seven years. Even this range is extraordinarily harsh; the Guideline for receipt of child pornography has been widely criticized for its arbitrary enhancements and overly punitive application for many years.

Ordinarily, the Guidelines are entitled to some degree of deference because many of their provisions are the product of years of careful study by the Sentencing Commission. When a particular Guideline is not the result careful study or empirical analysis, by contrast, such deference is unfounded. *See Kimbrough,* 552 U.S. at 108-09. In *Kimbrough*, a case involving the sentencing disparity between crack cocaine and powder cocaine offenses, the Supreme Court held that district courts have discretion to vary from a correctly calculated Guidelines range "based solely on policy considerations, including disagreements with the Guidelines." *Id*. at 101; *see also Pepper v. United States*, 562 U.S. 476, 508 (2011) (Breyer, J., concurring) (citing *Booker*, 543 U.S. at 261-262) ("the law permits the court to disregard the Guidelines only where it is 'reasonable' for a court to do so."). In particular, the Supreme Court recognized that when

Guidelines are not the result of "empirical data and national experience, guided by a professional staff with appropriate expertise," they do not "exemplify the Commission's exercise of its characteristic institutional role." *Id.* at 109. In such cases, sentencing courts may conclude that the Guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Id.* at 110.

The Ninth Circuit has reached the same conclusion specifically regarding the child pornography possession and receipt Guidelines at U.S.S.G. § 2G2.2. *See United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011). Not only does the *Henderson* decision recognize that "district courts may vary from child pornography guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case," *id.* at 963, it holds that a district court "commits procedural error when it fails to appreciate its *Kimbrough* discretion to vary from the child pornography Guidelines based on a categorical disagreement with them." *Id.* at 964.

The Guidelines for child pornography offenses have increased dramatically over the years, and in nearly every instance, these increases were mandated by Congress, often over the objections of the Sentencing Commission. *See Henderson*, 649 F.3d at 960-62. When possession of child pornography was criminalized in 1990, the Sentencing Commission created a new guideline for that offense, with a base offense level of 10 and a two-level enhancement for material involving a prepubescent minor. *Id.* (citations omitted). Congress was not satisfied, however, and in 1991, "over the objection of the Commission," Congress directed the Commission to increase penalties for child pornography offenses. *Id.* at 960. Among other changes, Congress "explicitly ordered the Commission" to increase the base offense levels to 15 (for receipt, transportation, and trafficking) and 13 (for possession). *Id.* at 960-61. Congress demanded further increases in 1995, increasing the base offense levels by two levels and adding a two-level enhancement for use of a computer. *Id.* When the Commission submitted a report to Congress that was critical of the congressionally mandated two-level computer enhancement because "it failed to distinguish serious commercial distributors from more run-of-the-mill

12

users," Congress responded with yet more directives to increase penalties. *Id.* at 961 (citations omitted).

　　　With the enactment of the 2003 PROTECT Act, "Congress – for the first time and the only time to date – made direct amendments to the Guidelines." *Henderson*, 649 F.3d at 961 (citation omitted). These amendments included a range of enhancements based upon the number of images, including a 4-level enhancement for possessing 300-600 images, which the government previously suggested should apply here. *Id.*; Rizk Decl. Ex. A. In 2004, the Commission, following the recommendation of the U.S. Department of Justice, decided that for purposes of this enhancement, a video should be considered the equivalent of 75 images.[5] The equivalence ratio is completely arbitrary. According to the Sentencing Commission, this type of enhancement is applied in 87.7% of receipt cases, and thus does not meaningfully distinguish between individual cases but effectively serves only to increase the base offense level in almost all cases.[6]

　　　In total, the child pornography Guidelines have been substantively revised nine times during their 30 years of existence. The Ninth Circuit has squarely observed: "Most of the revisions were Congressionally-mandated *and not the result of an empirical study*." *Henderson*, 649 F.3d at 963 (emphasis added). "As the Commission itself has explained, '[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the [G]uidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress.'" *Id.* (citation omitted). The result is that many of the individuals sentenced under § 2G2.2 face sentences that are excessive and unwarranted.

---

[5] *See* U.S. Sentencing Commission, *The History of Child Pornography Guidelines* (Oct. 2009) at 10-11, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf (last accessed March 3, 2023).

[6] U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Non-Production Offenses* (June 2021), at 19, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (last accessed March 3, 2023).

The two-level enhancement for "use of a computer," applicable under either the production Guideline as discussed above or the receipt Guideline discussed here, is plainly meaningless and undeserving of any deference under *Kimborough*.[7] The enhancement applies in virtually every case today that is sentenced under § 2G2.2: in particular, according to the Sentencing Commission, the enhancement applies in 93.8% of receipt cases.[8] The fact is, most adults view and/or download legal pornography over the Internet by using a computer, tablet or similar device, and this observation applies to the illegal consumption of child pornography as well. *R.V.*, 157 F. Supp. 3d 207, at 232-36 (E.D.N.Y. 2016) (explaining how the "Internet revolution enabled child pornography consumption."). As long ago as 2012, the Commission itself realized that, "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography."[9] The Commission therefore recommended that the enhancements

> be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies."[10]

*See also United States v. Robinson*, 669 F.3d 767 (6th Cir. 2012); *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2004). Unfortunately, Congress has not updated the Guidelines along the lines that the Commission and the courts have repeatedly recommended.

---

[7] *See, e.g., United States v. Myles*, 16-CR-409 HSG (N.D. Cal. 2017) (granting variance because "use of a computer" enhancement applies in every case and is not a useful indicator of criminal activity); *United States v. Carignan*, 15-CR-003 VC (N.D. Cal. 2016) (varying from advisory range because of "problems" with the "use of a computer" enhancement and the enhancement for the number of images possessed).

[8] U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Non-Production Offenses* (June 2021), at 19, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (last accessed March 3, 2023).

[9] *See* U.S. Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses* (2012), at 6, *available at* https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses (last accessed March 3, 2023).

[10] *Id.*

14

The enhancement for "use of a computer" and for the number of images involved run afoul of the requirement that the sentencing court impose a sentence based on the individual characteristics of the offender. *See* 18 U.S.C. § 3553(a); *see also Henderson*, 649 F.3d at 965 (Berzon, J., concurring). As Judge Berzon notes, "an unduly deferential application of § 2G2.2 will lead to the vast majority of offenders being sentenced to near the statutory maximum term," a result which "stands in significant tension with a sentencing judge's duties 'to consider every convicted person as an individual.'" *Id.* (citation omitted). Because these enhancements apply in virtually every case, there is little room for the sentencing court to distinguish between more and less culpable offenders. The Sentencing Commission has thus observed, these "enhancements are intended to increase the offense level based on the presence of an aggravating factor, but they routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate," and "[t]hus, across all non-production child pornography offense types, § 2G2.2 fails to distinguish adequately between more and less severe offenders." Id. (emphasis added).

Yet another closely related problem with § 2G2.2 was identified by Judge Berzon in her concurring opinion in *Henderson*. Namely, § 2G2.2 often recommends "longer sentences for those who receive or distribute images of minors than the applicable Guidelines recommend for those who actually engage in sexual conduct with minors." *Henderson*, 649 F.3d at 965 (Berzon, J., concurring) (citation omitted). For example, a person pleading guilty to enticing a child to cross state lines and then molesting the child would face a lower Guidelines range than Mr. Haeuser. The sentences produced by other Guidelines that address very serious, violent conduct further highlight the startlingly excessive ranges produced by § 2G2.2. Had Mr. Haeuser robbed a bank and brandished a gun to threaten bank employees, and committed a carjacking to effectuate his getaway, he would face an offense level 26. Even more incredibly, had he assaulted someone with the intent to commit a second-degree murder and caused his victim a life-threatening injury, his offense level would still be lower, *i.e.*, 28.

In summary, the Guidelines usually are considered a cornerstone of reasonableness, but only because it is assumed that each section was "the product of years of careful study." *United*

*States v. Claiborne*, 439 F.3d 479, 481 (8th Cir. 2006). Where, as here, the Guidelines were not a product of careful study or empirical analysis any presumption that the child pornography Guidelines are reasonable is especially unfounded. Accordingly, the range articulated under the Guidelines should be afforded significantly less weight by this Court than in the ordinary case.

The defense offers this extensive critique not as some abstract or academic attack on the child pornography Guidelines, but to support the specific sentencing recommendation advanced by Mr. Haeuser. At a minimum, the Court should exercise its *Kimbrough* discretion to disregard the production Guideline altogether, and discount the nonsensical and meaningless enhancements for using a computer and possessing 300 to 600 images, which are unsupported by empirical evidence or common sense. *See Kimbrough*, 552 U.S. at 101; *United States v. Henderson*, 649 F.3d at 963. This is certainly the "reasonable" approach that the Supreme Court and the Ninth Circuit have endorsed as to judicial critiques of the Guidelines. *See, e.g., id.*; *Pepper*, 562 U.S. at 508. Should the Court do so, it would arrive at an effective Guidelines range of five to seven years, which supports Mr. Haeuser's recommendation of 60 months.

### C. Mr. Haeuser Objects to the Condition that He Not Access Adult Pornography, Online of Otherwise, Because it is Not Supported by the Record and Thus Would Violate § 3583(d) and his Constitutional Rights.

Conditions of supervised release must be reasonably related to the sentencing factors identified at 18 U.S.C. § 3583(d)(1), involve "no greater deprivation of liberty than is reasonably necessary" under § 3583(d)(2), and pass Constitutional muster. The proposed Special Condition No. 14 that is recommended by Probation fails all three tests.

First, the wording of Special Condition No. 14 runs afoul of *United States v. Gnirke*, 775 F.3d 1155 (9th Cir. 2015), in which the Court found the following condition violative of § 3583(d)(2) because it deprived the defendant of more liberty than is reasonably necessary:

> Not possess any materials such as videos, magazines, photographs, computer images or other matter that depicts "sexually explicit conduct" involving children and/or adults, as defined by 18 [U.S.C. § ] 2256(2); and not patronize any place where such materials or entertainment are available.

*Id.* at 1163-65. As the *Gnirke* Court explained, the condition "imposed sweeps too broadly by limiting [the defendant's] access to non-pornographic depictions of sexually explicit conduct'

16

involving only adults." *Id.* at 1164. In addition, the condition limited "Gnirke's access to depictions of adult sexual conduct using a statutory definition of 'sexually explicit conduct' that Congress has applied only to depictions of children[,]" which encompassed "much more than what is commonly understood as pornography in the context of adult sexual activity." *Gnirke*, 775 F.3d at 1161. Put another way, the wording of the condition covers depictions of adult sexual activity—which are pervasive in our culture not only online, but also in movies, magazines, and other media—that is not even pornographic in nature. The restriction as written thus sweeps far too broadly and is constitutionally deficient.

"Because adult pornography enjoys First Amendment protection, a ban on access to adult pornography is 'only appropriate where it is reasonably necessary to assist the defendant's rehabilitation or to protect the public.'" *United States v. Canfield*, 893 F.3d 491 (7th Cir. 2018) (quoting *United States v. Wagner*, 872 F.3d 535, 542 (7th Cir. 2017)); *accord United States v. Castellano*, --- F.4th ---, 2023 WL 2056029, at *4-6 (4th Cir. Feb. 17, 2023). Multiple Circuit courts have held that such serious limitations on defendants' Constitutional rights require a record that reflects individualized findings specific to the defendant to justify such restraints. *Id.* at 495-96; *United States v. Ellis*, 984 F.3d 1092, 1099 (4th Cir. 2021) (requiring "individualized evidence linking pornography to [the defendant's] criminal conduct or rehabilitation and recidivism risk"); *United States v. Martinez-Torres*, 795 F.3d 1233, 1237 (10th Cir. 2015) ("The district court's sole expressed reason for the condition [banning adult pornography] was that Defendant had been convicted of a sex offense—intentionally causing the penetration of the sexual organ of a child younger than 14 years of age. But that is not enough."); *United States v. Voelker*, 489 F.3d 139, 151 (3d Cir. 2007) ("[N]othing on this record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense [receipt and possession of child pornography], nor is there any reason to believe that viewing such material would cause Voelker to reoffend.").

The Sentencing Commission does not specifically recommend a blanket ban on adult pornography as a special condition of supervised release for individuals convicted of sex offenses. *See* U.S.S.G. § 5D1.3(d)(7). Similarly, the Administrative Office of the Courts for the

17

U.S. Probation Office further recommends that a prohibition on viewing and possessing adult pornography may be appropriate when it is "based on the specific risks in the individual case."[11] Importantly, the Probation Office states that, "[d]ue to the complex and individualized nature of sex offense-specific risk factors, probation officers should not recommend this condition *until there has been an assessment of sexual deviance and risk by a sex offense-specific treatment provider.*" *Id.* (emphasis added).

Here, Probation in the PSR merely points to the nature of the offense overall as a reason to impose the condition, and suggests that an individualized assessment by a treatment provider should be performed sometime later. Probation's justification in the PSR reads: "If after a comprehensive evaluation, the sex offense specific treatment provider determines use of adult pornography does not increase the defendant's risk for sexual offense recidivism, this condition can be revisited by the Court and its use can be authorized in accordance with the therapist's recommendation." PSR, Sentencing Recommendation, at 7. This approach is backwards, contrary to the guidance provided by the Sentencing Commission and even from U.S. Probation itself; accepting the invitation to abridge Mr. Haeuser's constitutional freedoms first, and then assess whether there were really any reason to do so later, would constitute clear error under the case law.

As is actually relevant under § 3583(d), this is not a case that involves addiction to adult pornography that led to a possession or receipt offense. There is no indication anywhere in the record that adult pornography is problematic or triggered the offense conduct at issue. Mr. Haeuser has had his electronic device monitored for over a year, and there is no evidence that he has any particular interest in adult pornography. Adult pornography played no role whatsoever in the offense. There is also no evidence that Mr. Haeuser presents any real risk of reoffending. The offense occurred years ago, he ceased the behavior, and never repeated it. When he was arrested,

---

[11] U.S. Courts, Overview of Probation and Supervised Release Conditions, Chapter 3: Restrictions on Viewing Sexually Explicit Materials, *available at* https://www.uscourts.gov/services-forms/restrictions-viewing-sexually-explicit-materials-probation-supervised-release-conditions (last accessed Feb. 27, 2023).

he promptly and truthfully admitted his crime. He has never been convicted of any other sex offense, or even any other crime. For all this reasons, the Court should not adopt Special Condition No. 14.

## IV.  LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). Thankfully, the Sentencing Guidelines range is not binding and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence. Importantly, the Court may not presume the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam). Here, for all the reasons set forth above, *Kimbrough* deference is not appropriate here given the fundamental flaws in the child pornography Guidelines. Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

## V.  THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553

Several matters warrant the Court's consideration in connection with Mr. Haeuser's request for a sentence of 60 months:

*First*, the charged offense and Mr. Haeuser's current circumstances counsel in favor of a sentence of 60 months. While the charged offense is certainly very serious, it is guaranteed to be punished severely thanks to the mandatory minimum that applies. And, as noted above, and as the government itself has to concede, there are also a number of aspects of the offense conduct

which are relatively mitigating: Mr. Haeuser did not attempt to contact the victim in-person, and he certainly made no attempt whatsoever to assault the victim; the offense was entirely remote, conducted via a relationship that was online only; the number of images and videos involved is very small, particularly for an interaction that continued for two years and constituted thousands and thousands of messages; thus, mostly, the relationship just constituted lots of messaging back and forth which, while certainly inappropriate, overwhelmingly did not involve soliciting child pornography; there are no other victims, and there is zero other evidence that Mr. Haeuser is generally attracted to minors, or that he has ever attempted to strike up a relationship with any other minor; Mr. Haeuser did not distribute or share the child pornography with any other person[12]; he did not possess child pornography from any other source, and is not a "collector"; he did not abuse a position of trust in relation to the minor; there was also no incapacitation, coercion, enticement, or misrepresentation; he ceased the conduct years ago and never repeated it; and, when he was arrested he promptly admitted his offense and then plead guilty, accepting responsibility.

Also very important, of course—Mr. Haeuser has never been accused of any other crime in his life, let alone a sex crime. He has never served a sentence of any length. Thus, a sentence of 60 months in federal prison is extremely harsh. Mr. Haeuser will also be punished severely because of his particular life circumstances: he is extremely likely to lose his grandmother and possibly his grandfather to old age. These are the only family members and supporters that have shown long-term interest and love for Mr. Haeuser. The nearest BOP facility that is capable of housing sex offenders is in Tucson, Arizona; he is destined to be held at a prison that is well beyond the 500-mile thresh hold specified in the First Step Act that was supposed to ensure

---

[12] Probation makes reference to "demand" for child pornography online and wrongly suggests that Mr. Haeuser somehow contributed to this problem and thereby fueled a larger and continuing harm to victims. In fact, there is no evidence Mr. Haeuser ever distributed the images or videos in any way, and thus Probation's observations are not in line with the evidence. This offense was discrete: it is over, and there are no duplicates of images that have been found online.

prisoners are not too far from their families. In this case, Mr. Haeuser's grandmother is unable to travel so far. In all likelihood, he will not see her again after his surrender.

Ordinarily, before meting out a long federal prison sentence, a sentencing court will carefully consider any prior punishment and consider what progressive sentence is required. Here, there is no prior sentence, and thus a 60-month sentence is guaranteed to massively punish Mr. Haeuser. A sentence of 60 months is particularly harsh—and frankly dangerous—for somebody like Mr. Haeuser, given his background. Mr. Haeuser has been the victim of bullying and serious harassment since he was in first grade; the level of antagonism and assaults against him due to his weight and appearance are almost certain to increase exponentially at a BOP facility. It is also particularly harsh because Mr. Haeuser is now a convicted sex offender and such offenders are of course especially heavily targeted by inmates at BOP. It is no answer to say that he will be housed at a facility with special units for sex offenders. As the Court well knows, most sex offenders before this Court have been to custody previously and are better equipped to survive it. Mr. Haeuser has never been to custody, ██████████████████████ ████████████████████████ Thus, he is at *serious* risk of being assaulted or worse. Five years of such jeopardy is more than sufficient—additional years in a facility where he is vulnerable to emotional and physical abuse is far greater punishment than is necessary.

Also relevant is the fact that Mr. Haeuser's request comes at the tail end of the COVID-19 pandemic. Although local and national emergencies have recently been declared at an end, COVID-19 of course remains in our communities and our jails and prisons. Mr. Haeuser, given his obesity and his history of serious asthma is at particular risk for serious illness or death should he contract COVID-19. Avoiding COVID-19 over a period of five years will be very challenging, perhaps impossible. And while it may seem like just a fact of life at this point, for Mr. Haeuser, COVID-19 could portend a death sentence. At a minimum, the threat of severe illness and the sub-standard medical care BOP provides is itself heavy punishment that merits consideration.

Although the government, for its part, acknowledges that Mr. Haeuser has never received a sentence previously or even been arrested or accused of a crime, the United States completely

ignores the difficult circumstances of Mr. Haeuser's background and childhood. Astonishingly, ███ ███████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████ The government's recommendation is thus pure advocacy on one side; it not tempered by any recognition of all of the circumstances that the sentencing statute commands the Court to consider when determining a sentence.

Instead, the government argues that a sentence that is double the mandatory minimum and well above the Guideline calculation the government itself proposed, is reasonable. It fails to explain why other than restating a summary of the offense conduct and reiterating the harm Mr. Haeuser did. Those are important considerations, of course, but they are not the only considerations. Moreover, a sentence that is twice the mandatory minimum and well-above the government's own Guidelines calculation is an extraordinarily harsh sanction that is rarely recommended and even more rarely handed out in this district. There is nothing so particularly aggravating or especially egregious about this case, as compared to the vast majority of cases like this one that are routinely brought in this district.

Here, notably, the government also initially proposed to dispose of the case with a plea agreement under which it would be recommending a sentence of either 57 or 97 months. Its greatly escalated sentencing recommendation now appears to be the result of litigation strategy alone—an effort to punish Mr. Haeuser simply for declining a plea agreement and pleading guilty without one—which is quite inappropriate in these circumstances. Sentencing recommendations should be based on the offense conduct, the defendant's background, and other factors set forth under § 3553(a), all of which are exactly the same today, just as they were day the government extended Mr. Haeuser a plea offer. Additionally, the government's shifting position shows just how incredibly arbitrary the Guidelines and possible penalties are in a case such as this.

In sum, here, given all of the circumstances relating to Mr. Haeuser and the offense, additional custodial time is not necessary.

*Second*, deterrence does not justify a longer sentence. As an initial matter, the available data does not support the conclusion that longer sentences promote general deterrence.[13] This is *not* a case that has generated headlines in the press, or that is closely watched by some particular constituency. The general public has no appreciation for the range of sentences imposed in federal sex cases, and as set forth above, for decades there has been vociferous criticism of the penalties and Guidelines associates with this class of offense. Ultimately, it is simply not necessary to sentence Mr. Haeuser to longer than 60 months in order to send a message. Seven or nine or ten years or more will not have any meaningful impact on generalized deterrence. In the circumstances present here, such a sentence is extremely harsh and will dramatically and permanently upend Mr. Haeuser's life. No reasonable outside observer would contend otherwise.

Given the particulars of this case, the concept of specific deterrence does not require a longer sentence, either. Mr. Haeuser is *extremely* unlikely to reoffend. He has none of the risk factors that would indicate a predisposition to offend in the first place, or predict recidivism down the road. He has never engaged in related or similar conduct before or after this offense. He has exhibited no penchant for collecting child pornography or any other interest in children. Perhaps the only factor in his background that sheds any light on why this occurred is the ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████ But given that it has been years since he ceased the offense conduct, and never repeated it again, there is little to no realistic cause for concern that he might repeat his mistake—especially after serving an extremely harsh multiyear sentence in federal prison that will unquestionably change his life.

*Third*, public safety certainly does not mandate a longer sentence. Mr. Haeuser has been removed from the community already for the past year (and more) as a result of his pretrial

---

[13] *See, e.g.,* Kelli D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

release conditions. He will be subject to intensive monitoring by U.S. Probation when he is released: he will be prohibited from having physical proximity to minors and his online activities will be completely surveilled. In all, the public safety intervention this case effectuates, including the time he spent under pretrial restrictions, serving a sentence, and finally on supervised release, will span years—well over a decade at minimum, even if the Court adopts the sentence urged by the defense. The requirement that he register as a sex offender is likely to last his lifetime, such that law enforcement is always aware of his whereabouts. On top of that, for all the reasons discussed above, Mr. Haeuser is extremely unlikely to reoffend. Thus, public safety certainly does not require a longer sentence.

*Fourth*, and finally, Mr. Haeuser personal history strongly counsels in favor of a downward variance. ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████ This is, in large part, why he finds himself before the Court for sentencing. The defense therefore strongly urges leniency.

## VI.  CONCLUSION

For all these reasons, Mr. Haeuser respectfully requests a sentence of 60 months, followed by five years of supervised release.

1

2

3                                                     Respectfully submitted,

4       Dated:    March 3, 2023                       JODI LINKER
                                                      Federal Public Defender
5                                                     Northern District of California

6

7                                                         _____/S_____
                                                      DAVID W. RIZK
8                                                     Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28